<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAROL HERRING, individually and on behalf of all persons similarly situated, | : : : : |
| Plaintiff, | : Civ. No. 06-267 (GEB) : |
| v. | : **MEMORANDUM OPINION** : : |
| HEWITT ASSOCIATES, INC., | : : |
| Defendant. | : : |

**<u>BROWN, Chief Judge</u>**

This matter comes before the Court upon the motion of plaintiff Carol Herring ("Plaintiff") to facilitate notice pursuant to 29 U.S.C. § 216(b). The Court has read and considered all documents filed and submitted and has decided the motion based upon the parties' submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Plaintiff's motion to facilitate notice is granted.

**I.   BACKGROUND**

   **A.   Procedural History**

On January 20, 2006, Plaintiff filed a class action Complaint against Defendant in the United States District Court, District of New Jersey. (Docket No. 1). Plaintiff alleges that she and all other similarly situated benefits analysts employed by Defendant were classified incorrectly as exempt from receiving overtime premium payments under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the New Jersey Wage Payment Law ("NJWPL"), 34:11-56a1 et seq.

(Compl., ¶¶ 23-28). The Complaint states an opt-in nationwide collective action on behalf of Hewitt employees who were misclassified as exempt. (Compl., §§ 8-13). On July 21, 2005, Angela Bryant filed a lawsuit in the Northern District of California, which was subsequently transferred to the Southern District of Texas on October 14, 2005. Ms. Bryant's complaint also stated an opt-in nationwide collective action on behalf of Hewitt employees who were misclassified as exempt. In February 2006, Ms. Bryant filed a motion to dismiss without prejudice in the Southern District of Texas, and filed a written consent to join in the Herring litigation in this district. The motion to dismiss was granted in that matter on May 3, 2006.

**B.     Factual History**

Defendant employs benefits analysts to provide human resources outsourcing services to various businesses, including large corporations. According to Plaintiff, benefits analysts throughout the United States provide these services and have the same job duties and responsibilities. (Herring Decl., ¶¶ 6, 9, 12; Bryant Decl., ¶¶ 4, 6-7). Defendant's plan administration service is organized by client teams, and each client has benefit plans governed by unique terms and provisions that must be learned and understood by the benefits analysts on that team. (Stiroh Decl., ¶ 3). There are three benefits analyst job titles (each with its own internal job code) corresponding to the type of benefit plan administered by Defendant. (Def.'s Br. at 5). The three benefits analyst positions are Defined Benefit ("DB"), Defined Contribution ("DC") and Health and Welfare Benefits Analysts ("H&W"). Id. Plaintiff and Ms. Bryant are H&W benefits analysts in New Jersey and Texas, respectively.

Defendant created a written job description for the benefits analysts as well as a role portrait, which provides a general overview of the position. (Roberson Decl., Exh. D, E, F). A benefits analyst is an entry level position. Id. According to the job description, the responsibilities of a

2

benefits analyst include duties such as: process improvement, data file processing and job scheduling/monitoring, executing inbound and outbound file processing (e.g. human resources data, payroll, pensions, eligibility), resolving data edits and completing manual calculations. (Roberson Decl., Exh. D). Benefits analysts also perform system updates and year end processing and reporting, review transactions for accuracy and perform other human resource data entry tasks and data processing tasks. (Roberson Decl., Exh. D, E). According to Plaintiff, these responsibilities are primarily data entry, non-management, non-discretionary duties. (Herring Decl., ¶¶ 7, 9-12; Bryant Decl., ¶¶ 7-11).

Plaintiff and Ms. Bryant explain that, for example, they entered and maintained benefits information into computers for Hewitt's client corporations, which involved identifying data errors, manually updating subscriber information and answering client or subscriber questions regarding benefits plans and subscriptions. Id. According to Plaintiff, benefits analysts do not have managerial responsibilities and exercise little, if any, independent judgment with respect to significant matters. (Herring Decl., ¶¶ 9,11,13; Bryant Decl., ¶ 10). Plaintiff also claims that benefits analysts can take few steps without first obtaining manger approval, and exercised little discretion. Id. Defendant, however, contends that the benefits analyst's role requires the exercise of discretion on matters of significance. (Bryant Dep., 70-72).

Plaintiff and Ms. Bryant claim that they commonly work in excess of 40 hours per week without overtime. (Bryant Decl., ¶ 12). The typical hours for benefits analysts can vary between 45 and 50 hours a week, and Defendant encourages the analysts to work more than 40 hours per week. (Brown Dep., 107:21-25; Stiroh Dep., 26:3-10, 26:11-15). Full-time benefits analysts are not paid overtime pay for the overtime hours worked. (Sherman Dep., 25:24-26:13; Stiroh Dep., 20:9-12).

The benefits analysts are paid as salaried employees. (Sherman Dep., 17:6-11, 21:21-24). Plaintiff estimates that there are two to five hundred benefits analysts currently working in the United States. (Compl., ¶ 9; Stiroh Dep., 14:17-18). Defendant notes that Plaintiff has advertised their case on the Internet, and out of a putative class of approximately 1,172 individuals who held one of three benefits analyst job titles, a total of three additional plaintiffs have opted-in. (Def.'s Opp., at 2).

## II.   DISCUSSION

### A.   Standard for Facilitating Notice Pursuant to 29 U.S.C. § 216(b)

Section 216(b) of the FLSA provides in pertinent part:

> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 170 (1989). "No employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). For an action to proceed as a collective action, § 216(b) sets two basic requirements: (1) class members must be "similarly situated" and (2) members must affirmatively consent to join the action. Id. There a two-stage test involved in establishing a collective action. Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 496 (D.N.J. 2000). The first stage is the notice stage, when the court determines whether notice should be given to a

potential class member. Id. at 497.  The court's determination "typically results in conditional certification of a representative class." Id.  At the second stage, when the court has more evidence and the case is ready for trial, the court makes a final certification.  Id.

Plaintiff bears the burden of showing she is similarly situated to the remainder of the proposed class.  Morisky, 111 F. Supp. 2d at 496.  In determining whether to allow opt-in notification and certification under the FLSA, the Third Circuit applies the "two-step certification" approach set forth in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987); see also Morisky, 111 F.Supp. 2d at 497.

> The first step in this test is conducted early in the litigation process, when the court has minimal evidence.  This step is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly situated employees.  At this stage, the court grants only conditional certification of the class for the purposes of notice and discovery, and this is done under a comparatively liberal standard.

Bosley v. Chubb Corp., No. 04-4598, 2005 WL 1334565, at * 2 (E.D. Pa. June 3, 2005) (internal citations omitted); see also Morisky, 111 F.Supp. 2d at 497.  The second step usually occurs "after the completion of class-related discovery." Bosley, 2005 WL 1334565, at * 2 . "During the second step, the court conducts a specific factual analysis of each employee's claim to ensure that each claimant is an appropriate party.  Plaintiffs bear the burden of showing they are similarly situated to the remainder of the proposed class."  Id.

At the notice stage, the court "usually has only minimal evidence before it" and thus, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."  Morisky, 111 F.Supp. 2d at 497 (quoting Thiessen v. General Electric Capital Corp., 996 F.Supp. 1071, 1080 (D. Kan. 1998)).  Some courts require

"nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan [in violation of law]." Id.; see also Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988). Next, the court "makes a second determination after discovery is largely complete and the case is ready for trial." Morisky, 111 F.Supp. 2d at 497 (quoting Thiessen, 996 F.Supp. at 1080). During this stage of the analysis, the court determines whether the plaintiffs are "similarly situated," employing a stricter standard as there is much more information on which to base its decision. Id.

  B. **Class Certification**

    *1. This Court Will Not Proceed to the Second Stage of Class Certification at This Time*

The parties dispute whether enough discovery has been completed to date for this Court to consider proceeding to the second stage of the certification test. At the second stage, the Court is asked to make a conclusive factual determination regarding whether the plaintiffs are "similarly situated." Armstrong v. Weichert Realtors, No. 05-3120, 2006 U.S. Dist. LEXIS 31351, at *3 (D.N.J. May 19, 2006). The Defendant notes that when discovery relating to the issue of collective action certification has occurred, the "two 'step' method collapses into one" and the Court may proceed directly to the second stage of the Lusardi analysis. Morisky, 111 F.Supp. 2d at 497-98. The court in Lusardi considered several factors when determining class certification, such as, the disparate factual and employment settings of the individual plaintiffs, the various defenses available to defendants and fairness and procedural considerations. Lusardi, 118 F.R.D. at 359.

  Defendant claims that substantial discovery has taken place on the certification issue, specifically, that the named Plaintiffs and three Hewitt representatives have been deposed, and

6

Hewitt has produced thousands of pages of documents and electronic data. (Def.'s Opp., at 10). Plaintiff, however, contends that significant discovery has not been conducted in this matter, and that the discovery has been restricted by the Court until after resolution of the current motion. (Pl.'s Reply, at 2). Plaintiff also claims that there are still documents that have not been produced by Defendants relating to this certification issue. Id. at 3. The parties were directed by this Court to complete discovery regarding conditional class certification. (Docket No. 26, Scheduling Order).

As stated above, the Court is required to first make a determination at the notice stage - the point at which it must be determined whether notice of this matter should be given to potential class members. Morisky, 111 F.Supp. 2d at 497. The Court may make this determination with only minimal evidence before it at this stage, in some cases nothing more than substantial allegations by the plaintiff. Id. Here, the parties have conducted some discovery specifically targeted at conditional class certification, and thus, the Court has more than enough evidence before it to consider certification at stage one. To engage in a more substantial, factual determination at stage two requires discovery to be largely complete and the case ready for trial. Id. Defendant contends that when discovery relating to the issue of collective action certification has occurred, the "two 'step' method collapses into one" and the Court may proceed directly to the second stage of the Lusardi analysis. Morisky, 111 F.Supp. 2d at 497-98. In Morisky, 100 potential plaintiffs had already opted into the lawsuit, and the court determined that it was "clearly beyond the first tier of the [above] analysis" and discovery was complete. Id. Here, only three plaintiffs have opted into this lawsuit of the potential 1,172 class members. Additionally, while discovery relating to the issue of certification has been conducted, discovery as a whole is not yet complete. Thus, this case is not "ready for trial" and it is premature for this Court to make factual findings regarding certification.

Accordingly, this Court will only address stage one of the Lusardi analysis regarding certification for notice purposes. Once discovery is complete and the case becomes trial-ready, this Court will address stage two of class certification as set forth in Lusardi.

### 2.   *Notification and Conditional Certification*

To determine whether this case should be conditionally certified for purposes of notice, the Court must inquire into whether the "Plaintiff's proposed class is constituted of similarly situated employees." Bosley, 2005 WL 1334565, at *2. The "'similarly situated' showing at this stage establishes nothing more than the right of plaintiffs to 'maintain' a collective action." Sperling, 118 F.R.D. at 407. The finding "provides for unified trial preparation, prosecution, and defense on what appears to be a single discriminatory decision . . . ." Id. The court in Sperling also noted that there is nothing to prevent a court from "modifying or reversing a decision on 'similar situations' at a later time in an action, as new facts emerge." Id. (citing Lusardi, 99 F.R.D. at 93). The preliminary determination at this preliminary stage "does not prejudice the defendants precisely because it is preliminary. It may be revisited (by motion for decertification) if it later appears, after appropriate discovery, that the additional plaintiffs who opt in the lawsuit are not similarly situated." Aquilino v. The Home Depot, Inc., No. 04-4100, 2006 U.S. Dist. LEXIS 66084, at *5-6 (D.N.J. Sept. 6, 2006) (quoting Patton v. Thomson Corp., 364 F. Supp. 2d., 263, 268 (E.D.N.Y. 2005)).

Plaintiff bears the burden of showing she is similarly situated to the remainder of the proposed class. Morisky, 111 F. Supp. 2d at 496. "Plaintiffs must show 'a factual nexus between their situation and the situation of other current and former [employees] sufficient to determine that they are 'similarly situated.'" Aquilino, 2006 U.S. Dist. LEXIS 66084, at *5 (quoting Hoffman v. Sbarro, Inc., 9892 F.Supp. 249, 262 (S.D.N.Y. 1997). Courts typically examine the pleadings and

affidavits in support of or in opposition to the proposed collective action to make this determination. Id. (citing Masson v. Ecolab, Inc., 2005 U.S. Dist. LEXIS 18022, at * 13 (S.D.N.Y 2005)). This inquiry requires a "relatively lenient evidentiary standard in determining whether a collective action is appropriate." Id. (quoting Masson, 2005 U.S. Dist. LEXIS 18022, at * 13). "[T]he merits of plaintiffs' claims need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated." Id. (quoting Masson, 2005 U.S. Dist. LEXIS 18022, at * 13).

Here, Plaintiff claims that Ms. Herring and Ms. Bryant are similarly situated to the potential class members for purposes of 216(b). Plaintiff contends that Herring and Bryant held the same job as the proposed class, had the same responsibilities and job expectations and were subject to the same company-wide policies of classifying them as exempt and denying them overtime pay. (Pl.'s Br., at 12). Plaintiff submits that Herring and Bryant and the potential class members regularly worked, and were expected to work, in excess of 40 hours a week and uniformly were not paid overtime compensation for that time due to their exempt status. Id. Plaintiff also cites to statements contained in declarations of managers and benefits analysts, claiming these declarations demonstrate that the analysts are similarly situated. For example, benefits analysts "are not regarded by Hewitt as managers; rather they are supervised by benefit operations managers and benefits service managers"(Kalinowska Dep. 20:10-12, 75:12-14; Able Dep. 39:15-16; Glover Dep. 16:21-17:23, 144:15-17; Malone Dep. 52:4-7; Teitelbaum Dep. 6:18-24); "all work with and are trained on Hewitt's proprietary databases and systems, including the Total Benefit Administration (TBA) process as well as the templates used for processing 'workflows'"(Hensel Dep. 53:21-54:1; Able Dep. 58:14-59:8; Basile Dep. 90:16-91:11; Glover Dep. 36:16-37:3; Gary Dep. 50:16-51:17; Malone Dep. 66:23-25; 67:12-14; Teitelbaum Dep. 32:18-33:2, 45:24-46:9); and "[do not] have authority

to hire, fire, promote, demote, discipline, conduct formal performance reviews, or set pay scales of other employees (Hensel Dep. 101:6-13; Able Dep. 54:10-55:15; Templeman Dep. 57:2-60:10; Daniels Dep. 109:19-111:13)." (Pl.'s Reply, at 6-7). Plaintiff claims that there is no requirement that all class members have identical experiences to be "similarly situated." Id. at 8 (citing Hayes v. Laroy Thomas, Inc., 2006 WL 1004991, at *6 fn 3 (E.D. Tex. 2006) ("Plaintiffs need only show that their positions are similar but not identical.")).

 Defendant, however, contends that a court must deny a motion for conditional certification and notice when determining whether the potential plaintiffs are similarly situated will require a highly-individualized and fact-specific analysis into the disparate factual and employment settings of each putative plaintiff. (Def.'s Opp., at 12 (citing Reich v. Homier Distrib. Co., 362 F.Supp. 2d 1009, 1013-15 (N.D. Ind. 2005)). Defendant contends that Herring and Bryant were not the victims of an unlawful scheme. Id. at 13. Further, Defendant claims that Herring and Bryant worked as H&W Benefits Analysts in New Jersey and Texas, and that the DB and DC Benefits Analysts' job duties differ greatly from H&W Benefits Analysts. Id. at 22. For example, in a study of eight client teams, Hewitt found as a percentage of their total work time that DC Benefits Analysts spent 22 percent less time performing workflows than H&W Benefits Analysts (29 percent vs. 51 percent) and 23 percent more time resolving other general issues unrelated to workflows (30 percent vs. 7 percent). (Def.'s Opp., at 22; Stiroh Decl., ¶ 8). Defendant claims that benefits analyst tasks, such as workflows and issue resolution, are inherently diverse and varied because each workflow is a custom, one-of-a-kind analysis. Id.; Teitlebaum Decl., ¶ 7. Defendants claim that "just as a determination of [plaintiff's] exempt or nonexempt status requires a detailed factual analysis of [their] daily activities and responsibilities, so does a determination of every individual [benefits

10

analysts'] exempt or non-exempt status." Diaz v. Elec. Boutique of Am., Inc., No. 04-840, 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (citing Morisky, 111 F.Supp. at 499).

At this notice stage of the proceedings, Plaintiff is not required to make a substantial showing that she is substantially similar to the potential class members. Rather, courts employ a lenient standard when determining if a potential class is similarly situated and should be noticed, and do not impose the stricter standard to certify a class prior to trial. Accordingly, this Court concludes that Plaintiff has submitted sufficient evidence to demonstrate that the potential class members are similarly situated for purposes of conditionally certifying this potential class for notice purposes pursuant to Section 216(b).

      C.      **Plaintiff's Case is Appropriate for Court-Facilitated Notice**

The benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffman-LaRoche, 493 U.S. at 170. "[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) (1982 ed.), as incorporated by 29 U.S.C. § 626(b) (1982 ed.), [in ADEA actions] by facilitating notice to potential plaintiffs." Id. Moreover, "because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." Id. at171 (quoting Gulf Oil Co. V. Bernard, 452 U.S. 89, 100 (1989)). "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id. at 172.

"The exempt or non-exempt status of any particular employee must be determined on the basis of whether his duties, responsibilities and salary meet all the requirements of the appropriate

11

section of the regulations . . . ." 29 C.F.R. § 542.201(b)(2). In order to determine whether an employee's duty is administrative or productive "is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.'" Morisky, 111 F.Supp. 2d at 499 (quoting Cooke v. General Dynamics Corp., 993 F.Supp. 56, 59-61 (D.Conn. 1997)).

Plaintiff claims that this action is appropriate for collective treatment because the benefits analysts are similarly situated and hold essentially the same job duties. Plaintiff also points out that the claims of the potential opt-in plaintiffs are being extinguished or diminished every day due to the running of the statute of limitations. (Pl.'s Br., at 13 (citing Redman v. U.S. West Bus. Res., Inc., 153 F.3d 691, 695 (8th Cir. 1998)). According to Plaintiff, in § 216(b) collective actions, the statute of limitations for those who have not filed consent forms is not tolled with the commencement of the action. Id. Plaintiff claims that court-facilitated notice can prevent the continued erosion of these claims. (Pl.'s Br., at 13). Plaintiff also claims that providing notice will create significant judicial economies. Id. Plaintiff contends that many courts have granted conditional certification in misclassification cases under the FLSA, particularly at the notice stage where plaintiffs have successfully met the lenient standard showing that the putative class is similarly situated. (Pl.'s Reply, at 11 (citing Goldman v. Radio Shack, No. 03-032, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003)). Plaintiff argues that differences in individual experiences do not preclude conditional class certification at the notice stage as long as class members are similarly situated, as the positions and experiences of potential class members need not be identical, only similar. (Pl.'s Reply, at 11 (citing Hayes, 2006 WL 1004991, at *6 fn 3); see also Moss v. Crawford, 201 F.R.D. 398, 410 (W.D.Pa. 2000) ("variations in the plaintiffs' duties, job locations and hourly billing rates do not

12

differentiate the collective basis of the class to the extent that it defeats the primary objectives of a § 216(b) action.").

Defendant claims that this action is not appropriate for collective action treatment. Defendant claims that determining whether plaintiffs performed exempt job duties requires a highly individualized and fact-sensitive inquiry. (Def.'s Opp., at 15). Defendant cites to the Diaz case, stating that "just as a determination of [the named plaintiff's] exempt or nonexempt status requires a detailed factual analysis of his daily activities and responsibilities, so does a determination of every individual [benefits analyst's] exempt or nonexempt status." Diaz, 2005 WL 2654270, at *3 (citing Morisky, 111 F.Supp. At 499). Defendant claims that Plaintiffs' duties "clearly included the exercise of discretion and independent judgment." Id. at 14. Defendant claims that Plaintiff cites no objective facts or documents to support the conclusory statements regarding benefits analyst duties in their declarations. Id. at 15. Defendant contends that benefits analyst's actual day-to-day job duties are determined, to a large extent, by their client's needs and expectations. Id. at 16. Defendant maintains that the job duties vary by the size of the client and the number of plans at issue. Id. at 18 (Bley Decl., ¶ 5). Defendant points out that some analysts spend a substantial portion of their time drafting and updating Standard Operating Procedures for lower ranking staff members to follow when a standard problem arises (Daniels Decl., ¶ 7), while others spend limited time on this function (Broghammer Decl., ¶ 17; Winkler Decl., ¶ 19). Defendant also claims that a benefits analyst's actual job duties are dependent on the analyst's level of competence and experience. (Def.'s Opp., at 19; Teitelbaum Decl., ¶ 6; Hampton Decl., ¶ 7).

In addition to the differences Defendant claims exist among the benefits analyst positions, Defendant contends that Plaintiff did not address the DB and DC Benefits Analysts in their motion,

13

which it claims differ markedly from the H&W Benefits Analysts. (Def.'s Opp., at 22). Defendant also notes that if any potential plaintiff were to opt into this case, his or her claims would be based largely on a different time period having little overlap with the time period applicable to the existing plaintiffs' claims. Id. at 23-24 (citing Reed v. Mobile Cty. Sch. Sys., 246 F.Supp. 1227, 1232 (S.D. Ala. 2003)). Defendant submits that the amount of unpaid overtime allegedly worked by the named plaintiffs varies significantly and will require highly individualized proof. Id. at 25.

Plaintiff has provided this Court with a sufficient showing that the potential class members are similarly situated to be conditionally certified for notice purposes. While Defendant claims that the highly individualized positions of the benefits analysts prevent this case from being treated as a collective action, courts have permitted exemption lawsuits to be treated as collective actions as long as class members are found to be similarly situated at the notice stage. Goldman, 2003 WL 21250571, at *8; Gerlach v. Wells Fargo & Co., No. 05-585, 2006 WL 824652 (N.D. Cal. March 28, 2006). We will not consider the substance of Defendant's arguments on the merits at this stage because only a motion for conditional certification is presently before us. Goldman, 2003 WL 21250571, at *8 (declining to consider the merits of an FLSA action involving exempt or nonexempt employees at the notice stage); see also Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits...."). Accordingly, this Court concludes that this action may proceed as a collective action.

    **D.**    **Production of the Names and Contact Information of Potential Class Members**

Plaintiff also asks this Court to direct Defendant to produce potential class member names and contact information. (Pl.'s Br., at 14). Plaintiff requests that Defendant be ordered to produce

14

the following within 10 days of the Court's order:

> A list, in electronic format, of all persons employed by Defendant as benefit analysts three years from the date of the order to the present including: name, address, telephone number, dates of employment, location of employment, employee number, if any, and date of birth.

Id. Defendant, however, contends that it has provided the identities of 1,172 potential plaintiffs to plaintiffs' counsel during discovery. (Def.'s Opp., at 27). The Court directs the parties to consult with the Magistrate Judge to determine what, if any, contact information is needed in order to facilitate notice to the potential class members.

### E.   Proposed Form of Notice

Plaintiff submitted a form of notice to this Court to notify potential class members of this action. Defendant did not submit any objection to the form of notice. The Supreme Court has instructed, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffman-LaRoche, 493 U.S. at 174. Before submitting this notice to the potential class members, the Court instructs the parties to meet and confer with regard to the proposed notice and then submit the proposed notice to the Court immediately thereafter. The parties are instructed to do so within 15 days of the date of this opinion and accompanying order to ensure that timely notice is provided to the potential class members.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to facilitate notice pursuant to 29 U.S.C. §

216(b) is granted.  The parties are also directed to consult with the Magistrate Judge to determine what information regarding potential class members is needed and to meet and confer regarding the form of notice within 15 days of the date of this opinion and submit the form of notice to this Court immediately thereafter.  An appropriate form of order accompanies this Memorandum Opinion.

Dated: July 24, 2007

                                                                 s/ Garrett E. Brown, Jr.
                                                 GARRETT E. BROWN, JR., U.S.D.J.